United States District Court
District of South Carolina

| | | |
|---|---|---|
| Carlton Buckley, # 10402-018; | ) | C/A No. 4:05-3235-TLW-TER |
| Plaintiff, | ) | |
| vs. | ) | **Report and Recommendation** |
| United States Government, | ) | |
| Defendant. | ) | |

The Plaintiff, Carlton Buckley (hereafter, the "Plaintiff"), is a federal prisoner. He has characterized his claim as an action pursuant to the Federal Tort Claims Act (FTCA), Title 28 United States Code sections 2671 through 2680.[1] Under 28 U.S.C. §636(b)(1)(b), and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in prisoner cases concerning prison conditions and submit findings and recommendations to the District Court.

## BACKGROUND

At the time he commenced this action, Plaintiff was incarcerated at the Edgefield Federal Correctional Institution (FCI-Edgefield) in Edgefield, South Carolina. In United States v. Buckley, 6:99-cr-00218 (M.D. Florida 1999), a jury convicted him on April 14,

---

[1] –In his various filings with this Court, plaintiff has also made passing reference to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In Bivens, the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. *See* Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Essentially, however, his theory of recovery in this action appears to be tortious conduct by officials of the FCI-Edgefield.

1

2000, for violations of 18 U.S.C. § 371 (Conspiracy to Defraud the United States) and 18 U.S.C. § 1344 (Bank Fraud).[2] On June 26, 2000, Plaintiff was sentenced to eighty (80) months imprisonment, followed by 36 months supervised release, together with restitution (joint and several with a co-defendant) in the amount of Seventy Eight Thousand Dollars ($78,000.00) as well as other terms and conditions. Plaintiff's conviction was affirmed by the United States Court of Appeals for the Eleventh Circuit in U.S. v. Buckley, 29 Fed. App. 572 (11th Cir. 2001).

On December 2, 2002, Plaintiff filed a motion in the sentencing court to vacate his conviction under 28 U.S.C. § 2255. See Buckley v. U.S.A., 6:02-cv-01433 (M.D. Florida 2002) [see also, U.S. v. Buckley, 6:99-cr-0218 (M.D. Florida 1999), Document # 234]. The motion was denied on July 9, 2003. Plaintiff did not appeal, thereby concluding appellate and collateral attacks upon his underlying criminal prosecution.

Since his conviction, Plaintiff has been incarcerated at a number of different facilities. They have included: (1) McRae Correctional Institution (McCI) in McRae, Georgia – a contract facility of the Federal Bureau of Prisons (FBOP); (2) Coleman Federal Correctional Institution (FCI-Coleman), in Coleman, Florida; (3) Yazoo Federal Correctional Institution (FCI-Yazoo), in Yazoo, Mississippi; and (4) FCI-Edgefield.

Plaintiff's original complaint in this action was twenty-four pages in length. In his "procedural history" Plaintiff stated that he filed Tort Claim #TRT-SER-005-01219 seeking

---

[2] – The docket for United States v. Buckley, 6:99-cr-00218, is accessible at the Public Access to Court Electronic Records (PACER) website maintained by the United States District Court for the Middle District of Florida. See <https://ecf.flmd.uscourts.gov>. The facts of the underlying criminal prosecution are set forth in Plaintiff's appellate brief, available via the WESTLAW online service at 2000 WL 34201633.

2

compensation for such injuries as "sleep deprivation, chronic stress, increased hypertension, loss in consultation fees and obstruction to Court access." [Docket Entry #1-1, p 1] The remainder of the complaint was a rambling narrative claiming "violative behavior of obstruction of due process" by various officials at McRae Correctional Institution. Even after careful review, the undersigned could not determine the specific conduct of particular Defendants about which the Plaintiff complained. Similarly Plaintiff's actual injury could not be discerned. Plaintiff essentially was aggrieved by failures of various Defendants to comply with his perception of governing FBOP regulations. At one point, Plaintiff complained that a disciplinary hearing on November 3, 2004, had been delayed resulting in sanctions which he believed was a denial of due process. [Docket Entry #1-1, p. 5] Plaintiff claimed that he had exhausted available FBOP administrative remedies with regard to the sanctions. At another point, Plaintiff complained of restrictions on his phone service. [Docket Entry #1-1, p. 6]

Despite the dearth of meaningful facts, Plaintiff concluded his original complaint with the following summation:

> These are the four detailed counts within the submitted motion:
>
> COUNT ONE (I):     DELIBERATE INDIFFERENCE AND RECKLESSNESS
> COUNT TWO (II):    RESTRICTED COURT ACCESS, LEGAL MAILS(S)
>                    AND PHONE CALL MISHANDELING [sic]
> COUNT THREE (III): OBSTRUCTION OF DUE PROCESS, RESTRICTED
>                    LIBERTY INTEREST
> COUNTY FOUR (IV):  CRUEL AND UNUSUAL PUNISHMENT THAT WAS
>                    WILFULL [sic] WANTON AND UNNECESSARY

[Docket Entry #1-1, p. 8]

The remainder of Plaintiff's filing consisted of attachments. Among the attachments was the first page of a letter dated May 18, 2005. The identity of the author cannot be

3

determined. The letter, however, denied Plaintiff's Tort Claim #TRT-SER-005-01219 to recover Sixty One Million Eight Hundred Thousand Three Hundred Dollars ($61, 800, 300.00) as compensation for loss of property and injury. The letter reported:

> You claim beginning on or about July 23, 2004, you were wilfully and knowingly given illegal and incorrect instructions by Bureau of Prisons' (BOP) Executive Staff. You allege this caused you a loss in consultation fees and access to the courts. You further allege the staff members' actions have caused you to suffer from sleep deprivation, mental and emotional damages, and hypertension.

[Docket Entry #1-1, p. 13.] The letter concluded that his claims were unfounded.

On December 12, 2005, the undersigned filed an order directing Plaintiff to bring his action into "proper form" under In Re: Procedures in Actions filed by Prisoners, 3:05-mc-5010 (D.S.C. November 1, 2005). Plaintiff was also instructed to submit his complaint on a standard form used in the District of South Carolina, confining his narrative to the essential facts upon which he based his FTCA claim. The instructions were explicit and set forth in bold font:

> **The plaintiff is a *pro se* litigant. In completing the standard § 1346 Complaint form the plaintiff shall confine himself to specific facts occurring from July 2004 through the date when he filed his tort claim TRT-SER-2005-01219. Events occurring before July 2004 or after the date of filing TRT-SER-2005-01219 shall not be included. The plaintiff is permitted to <u>attach no more than three (3) additional pages</u> supplementing the "Statement of Claim" in his Complaint form. The plaintiff shall attach a copy of the Standard Form SF-95 he filed to commence TRT-SER-2005-01219.**
>
> **In his "Statement of Claim" the plaintiff shall identify as "Defendants" those individual persons whose conduct has resulted in the alleged injury or injuries for which he seeks to recover monetary damages. The plaintiff shall describe this conduct succinctly and factually, providing dates on which the alleged incidents occurred.**

On January 5, 2006, Plaintiff filed the standard form complaint. He did not file a copy

of the SF-95 which would have enabled this Court to determine the precise loss or injury alleged and also to determine the time frame in which the damage allegedly was sustained.

Plaintiff's narrative in his new complaint is set forth below:

> Commencing from the confinement of Plaintiff at McRae Institution (a BOP facility) in McRae Georgia, Buckley was transferred to another BOP facility in Edgefield, S.C. Reprisals by BOP upon plaintiff, extends in retrospect back to 2003. Such retaliatory adversity was ignored by SERO in Atlanta, GA. No reprimand or correction was made. During Plaintiff's stay at Edgefield South Carolina additional issues arose. These cumulated issues including the previous McRae violations are stated. Note that dates of occurrences, began prior to claim date of regard.
> On or about May 2003 [sic] Buckley had a court order issued from Middle District Court in Fla. This was issued due to McRae's delay of Buckley's submission which the court did not receive. Buckley had to employ the services of a private law firm as an alternative to prepared 2255 motions on his behalf. McRae's staff had destroyed his work product. 4/03 due to the destruction of Buckley's motion, he failed to timely respond.[3] The attorneys tried but court did barr [sic].
> On or around 6/2004 [sic] plaintiff commenced a BP-8 filing and timely submitted to his counsel or at Edgefield S.C. There were several contrary points of view opposing Buckley's filing. Ultimately, Ms. Rippon atty of record allowed the filing but no one wanted to sign document as is required! Reluctantly they continued the initial process but actions were incomplete as region demands. The respond portion "B" was left blank. The case numbers were not issued nor did executive assistant Mr. Mike Smith sign off as required! These violations actions are not in accord to BOP laws. Unit Mgr Mr. Joy is a witness to these illegal action which was an obstruction in this case, to due process.
> Plaintiff must state for the record his concern that magistrate not confuse the separate cases. BOP has a routine procedure for each administrative remedy the problem which this court may possibly and easily over look is the habitual indifference which staff displays in each individual instance. Buckley wants the Court to take note that BOP staff's deliberate indifference is the obstruction action which ever way they can use it. However the cases are unrelated and need to be noted by this Honorable Court. This is overwhelmingly meritorious.
> An Affidavit was notarized by officer Ms M Brown which was submitted with

---

[3] – The PACER docket record for Plaintiff's § 2255 motion discloses that on April 18, 2003, despite the alleged destruction of his legal papers at McRae, Plaintiff managed to file a response to the United States motion for summary judgment.  See United States v. Buckley, 6:00-00218-PCF-KRS (M.D. Fla. 1999), Docket Entry #245. In May 2003, Plaintiff made other filings in related cases. His § 2255 motion was dismissed on July 9, 2003. The record does not reflect that Buckley retained counsel in the proceeding.

>the 99 pages of filed complaint.  This complaint was prepared in compliance with 28 USC of the Federal Tort Claim Act (TRT-SER-2005-01219)
>On or about 9/28/04 Unit Mgr Mr. Brawley (prior to being disciplined and relocated to Yazoo MS), had a clandestine meeting with Plaintiff Buckley.  This was Mr. Bradley's way to coerce Buckley into withdrawing his complaints against himself and DHO Ms. E. Slater.  Mr. Bradley violated the administrative rules when he interrupted a unit team meeting in process. The Case Mgr. Mr. Kidd who was presiding did not understand the charges of charging officer Mr. Bradley.  Reckless and careless Brawley entered the meting forcing Buckley to leave.  This behavior is not in accord with BOP laws of due process. This the Court must sanction as a violation.[4]
>The ongoing events extended into 2005 where Ms. Slater DHO failed to properly execute her duties.  An inmate expects BOP to obey their own laws.  Buckley was told in his written report that his phone services would be restored 1/02/05.  Yet Ms. Virginia Stewart technician was instructed to do otherwise.  Ms. Slater illegally ordered phone restoration Feb 1st 2005.  This negligence must not be covered up as BOP expect Court will do!  May this Court not prolong their decision to proceed to summon service!  Do not accept excuse of "error."  It is their wepon [sic].
>Plaintiff knows this Court is familiar with the actions usurped upon him continuously at different times.  This case is a 3rd series of abuse towards Buckley.
>Buckley respectfully implores this Court to recognize defendants violation of their own policy statement and their own laws.  May the Court find them guilty as charged.  May the court grant judgment in favor of plaintiff for the tort amount issued $61,8000,000.00.

[Docket Entry #4-1, pp. 5-8]

## *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant.  Therefore, his pleadings are accorded liberal construction. Hughes v. Rowe, 449 U.S. 5 (1980);  Estelle v. Gamble, 429 U.S. 97 (1976);  Haines v. Kerner, 404 U.S. 519 (1972);  Loe v. Armistead, 582 F. 2d 1291 (4th Cir. 1978);  Gordon v. Leeke, 574 F. 2d 1147 (4th 1978).   *Pro se* pleadings are held to a less stringent standard than

---

[4] – The matter of Plaintiff's disciplinary proceedings following an incident in September 2004, which proceedings allegedly were delayed, has already been presented by Plaintiff to this Court in Buckley v. Brawley, 4:04-2339-TLW-TER (D.S.C. 2004).  The "clandestine meetings" were also issues in that case. The undersigned filed a Report recommending summary dismissal.  Plaintiff thereafter voluntarily dismissed his action.  Plaintiff's allegations are no clearer at the present time than they were originally.  Since the present action is brought under FTCA, Plaintiff must allege some connection between this incident and his substantive property loss or injury.  He has made no such allegations.

those drafted by attorneys.  Hughes v. Rowe, supra.  Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Rule 8(a) of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) provides the following guidance with respect to complaints (and other affirmative claims):

> Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Plaintiff should be aware that persistent failure to comply with Fed. R. Civ. P. 8(a) can result in dismissal with prejudice, especially when a district court provides the offending party with warning.  See Michaelis v. Nebraska State Bar Association, 717 F. 2d 437 (8th Cir. 1983). In Brown v. Califano, 75 F.R. D. 497, 499 (D.D.C. 1977), the Honorable John Sirica, United States District Judge for the District of Columbia, offered the following assessment of a complaint in dismissing an action with prejudice:

> The pleading filed by the plaintiff in this case is indeed a confused and rambling narrative of charges and conclusions concerning numerous persons, organizations and agencies.  The complaint contains an untidy assortment of claims that are neither plainly nor concisely stated, nor meaningfully distinguished from bold conclusions, sharp harangues and personal comments.  Nor has the plaintiff alleged with even modest particularity the

dates and places of the transactions of which he complains. It belabors the obvious to conclude that the complaint filed in this action falls far short of the admittedly liberal standard set in F.R. Civ. P. 8(a).

## **FEDERAL TORT CLAIM**

Plaintiff was specifically directed to provide a copy of his SF-95, so that this Court could compare his administrative claim (and the time his claims arose) with his allegations in this action. Plaintiff has chosen to ignore this directive. The first step in the FTCA process is a mandatory administrative filing under 28 U.S.C. § 2675(a):

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

FBOP Program Statement (PS) 1320.06 ("Federal Tort Claims Act"), ¶ 7, clearly and in detail, describes the procedure by which inmates may recover monetary damages for personal injury sustained while in custody, beginning with the standard claim form (SF-95). Among the items required on the SF-95 is a "sum certain" (i.e., a specific amount of money). This information is mandatory, as the United States Court of Appeals for the Fourth Circuit explained in <u>Kokotis v. United States Postal Service</u>, 233 F. 3d 275, 278 (4th Cir. 2000)(citations omitted):

> An administrative claim must be properly presented. The FTCA's implementing regulations consider a claim to be properly presented when the government receives a completed SF 95 (or other written notification of an incident), ***and*** "a claim for money damages ***in a sum certain*...*"
> 28 C.F.R. § 14.2(a)(1999) (emphasis added); ***see also*** 39 C.F.R. § 912.5(a) (1999). Requesting a sum certain is a necessary element of any FTCA

administrative claim.  Failure to request a sum certain within the statute of limitations deprives a district court of jurisdiction over a subsequently filed FTCA suit.

Because FTCA is a waiver of sovereign immunity, compliance with procedural requirements – such as filing of the administrative claim –  is not only mandatory but is also "jurisdictional and may not be waived."  Henderson v. United States, 785 F. 2d 121, 123 (4th Cir. 1986).  See also Kielwien v. United States, 540 F. 2d 676, 679 (4th Cir. 1976).

While it appears that Plaintiff's claim was ultimately denied, this Court has been given no reason by Plaintiff to extend its jurisdiction in a waiver of sovereign immunity without the information contemplated by the administrative process.  Even if this Court were to disregard the requirements of FTCA, the pleadings in this case simply fail to allege any facts upon which recovery under FTCA could be granted.

## PRIOR ACTIONS

Plaintiff has a history of filing insubstantial claims in federal courts. On March 3, 2003, in the United States District Court for the Southern District of Georgia, Plaintiff filed Buckley v. Bell, et al, 3:03-0011 (S.D. Georgia 2003).[5]  For convenience, this action will be designated ***Buckley One*** hereafter.  Plaintiff characterized his action as a Bivens complaint and denominated himself "Trust Beneficiary – Court Movant."  ***Buckley One*** was screened by the Honorable W. Leon Barfield, United States Magistrate Judge for the Southern District of Georgia, pursuant to the Prison Litigation Reform Act (PLRA) of 1996, 28 U.S.C. § 1915A.  Magistrate Judge Barfield entered several orders attempting to clarify Plaintiff's

---

[5] – The docket record is accessible through the Public Access to Court Electronic Records (PACER) website of the United States District Court for the Southern District of Georgia. See <http://pacer.gasd.uscourts.gov> .

9

claims, at one point describing the pleading as "a confusing array of allegations against dozens of defendants." Ultimately, it became clear that Plaintiff had failed to exhaust available administrative remedies and ***Buckley One*** was dismissed.

On August 4, 2004, Plaintiff commenced <u>Buckley v. United States Government</u>, 4:04-21900-25BH (D.S.C. 2004) in this Court – hereafter denominated ***Buckley Two***. The new civil action was brought under the FTCA, specifically to recover damages alleged in administrative claim #TRT-SER-2002-09901. That claim involved a lost court summons which also been the first cause of action in ***Buckley One***). ***Buckley Two*** was dismissed by this Court on August 24, 2005. The dismissal was affirmed on appeal. <u>See</u> <u>Buckley v. United States</u>, 160 Fed. Appx. 294 (4th Cir. 2005).

Plaintiff commenced <u>Buckley v. Brawley</u>, 4:04-22895-TLW-TER (D.S.C. 2004) on December 10, 2004, as a <u>Bivens</u> action – for purposes of this Report denominated ***Buckley Three***. Plaintiff's claims in that action were not only frivolous but also replicated claims made in other cases, a fact noted in the Report of the undersigned filed on March 28, 2005. Plaintiff initially objected to the Report, but ultimately entered a voluntary dismissal of his action.

This Court may take judicial notice of these prior civil actions. <u>Colonial Penn Ins. Co. v. Coil</u>, 887 F.2d 1236, 1239 (4th Cir. 1989); <u>Shop v. Bell & Howell</u>, 872 F.2d 1178, 1182, 1989 (4th Cir. 1989); <u>Days v. Bounds</u>, 509 F. 2d 66 (4th Cir. 1975); <u>Mann v. Peoples First National Bank & Trust Co.</u>, 209 F.2d 570, 572 (4th Cir. 1954).

## ACTUAL INJURY REQUIRED

In this and in his prior actions, Plaintiff has failed to inform this Court about the

substantive or actual injury resulting from Defendants' alleged misconduct. Clearly this failure to articulate actual injury defeats any FTCA recovery. It also undermines any <u>Bivens</u> claim Plaintiff might be suggesting. Plaintiff evidently believes that any perceived violation of an FBOP deadline or regulatory provision amounts to a denial of constitutional protections, entitling him to recover monetary damages. In effect, he seeks to resurrect an approach to the judicial review of prison conditions which the United States Supreme Court decisively rejected in <u>Sandin v. Conner</u>, 515 U.S. 472 (1995). The Court observed that its prior decision in <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983), had created a mistaken impression in lower courts that the form of regulations should be controlling, with less concern about actual liberty or other protected constitutional interests:

> By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges.

515 U.S. at 481. <u>Sandin</u>, however, redirected judicial review to prison conditions (and precipitating administrative practices) which impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u>

Access to administrative remedies, however, is not itself a constitutionally protected right. In <u>Adams v. Rice</u>, 40 F. 3d 72, 75 (4th Cir. 1994), the United States Court of Appeals for the Fourth Circuit noted: "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state" (citations omitted). In <u>Flick v. Alba</u>, 932 F. 2d 728 (8th Cir. 1991) – a case cited in <u>Adams</u> – the Court explained that inmates have no liberty interest in access to a grievance process. Rather it is

the fundamental right to be vindicated through the grievance procedure that provides the essential test in such § 1983 (or Bivens) cases:

> When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.

932 F. 2d at 729.  At this point the underlying injury about which Plaintiff complained is still unclear.

With regard to emotional distress suffered while incarcerated at FCI-Edgefield, Plaintiff is barred as a matter of law from any recovery of monetary damages under the Prison Litigation Reform Act (PLRA) of 1996, 42 U.S.C. 1997e(e) which declares:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

In the final analysis, Plaintiff has failed to present this Court with the essential jurisdictional and factual bases for an action under FTCA or even under Bivens.  Given Plaintiff's pattern of prior insubstantial actions, it will be recommended that this action be dismissed with imposition of a "strike" under 28 U.S.C. § 1915(g).

## §1915 SCREENING

Under 28 U.S.C. § 1915 a District Court may dismiss a pleading by an indigent and/or *pro se* litigant upon a finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious."  § 1915(e)(2)(B)(I), (ii).  A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or in fact."  Denton v. Hemandez, 504 U.S. 25 (1992).  Hence, under § 1915(e)(2)(B), a claim based on a meritless

legal theory may be dismissed *sua sponte*.  Neitzke v. Williams, 490 U.S. 319 (1989); Allison v. Kyle, 66 F.3d 71 (5th Cir. 1995).  The court may dismiss a claim as "factually frivolous" under §1915(e) if the facts alleged are clearly baseless.  Denton v. Hernandez, supra.  In making this determination, the court is not bound to accept without question the truth of the plaintiff's allegations, but rather need only weigh the plaintiff's factual allegations in his favor.  Id.

## RECOMMENDATION

The Defendants should not be required to answer this action.  It is therefore recommended that the within Complaint be dismissed without prejudice **but that this dismissal be deemed a "strike" for purposes of 28 U.S.C. § 1915(g)**.  Plaintiff's attention is directed to the Notice on the following page.

                                           Respectfully Submitted,

                                           s/Thomas E. Rogers, III
                                           Thomas E. Rogers, III
                                           United States Magistrate Judge

April 24, 2006
Florence, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**& The Serious Consequences of a Failure to Do So**

  The petitioner is hereby notified that any objections to the attached Report and Recommendation must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976).

  During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.** See Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C. 1992). Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

  **This notice apprises the petitioner of the consequences of a failure to file specific, written objections.** See Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**
